HUNTER & McARTHUR v. T. N. BELL ET AL.

[FILED OCTOBER 21, 1891.]

1. **Review:** AFFIDAVITS used in support of a motion for a new trial must be preserved in a bill of exceptions to be available in the supreme court.

2. ————. In an action containing four counts for feeding fat steers, the evidence upon almost every point was conflicting, and it not appearing that the judgment was wrong it will be upheld.

ERROR to the district court for Valley county. Tried below before TIFFANY, J.

*E. M. Coffin,* and *Westover & Stone,* for plaintiffs in error, cited: *Brewer v. Wright,* 25 Neb., 305.

*Robbins & Babcock, J. N. Paul,* and *Darnall & Babcock, contra.*

MAXWELL, J.

This action was brought in the district court of Valley county by the defendants in error, against the plaintiffs in error, to recover the sum of $6,387.74, upon three causes of action as follows·

"The plaintiff, Theron N. Bell, complains of the defendants, Hunter & McArthur, a partnership but not incorporated, constituted of R. Hunter and D. A. McArthur, for that said defendants on or about the 3d day of November, A. D. 1885, entered into a contract in writing with said T. N. Bell, a true copy of said written contract is hereunto attached marked 'Exhibit A' and made a part of this petition, wherein it was agreed that said defendants should deliver to said plaintiff sixty head of cattle, all steers. To be fed full feed of corn from March 1, 1886, to October 1, 1886, said cattle, before weighing to said Bell, to stand off from feed for twelve hours at the stock yards

at St. Paul, Nebraska, which said steers when so weighed in the aggregate 38,370 pounds. That said Bell should use due diligence in taking care of said cattle, and to deliver the said cattle back to said Hunter & McArthur at the scales, and before weighing to stand off from feed and water for twelve hours unless otherwise agreed upon, but that said defendants Hunter & McArthur should have the option to take said cattle at any time after August 1, 1886, and before the time of final delivery named in said contract, October 1, 1886, by giving said T. N. Bell six days' notice of such intention.

"II. In consideration of the covenants aforesaid defendants, by the terms of the contract, agreed to pay said T. N. Bell six and one-fourth cents per pound for all flesh put on said sixty head of cattle over and above said 38,370 pounds and said plaintiff received from said defendants said cattle as agreed in said contract, and that plaintiff did feed said sixty head of cattle full feed of corn and did duly perform each and every part of his said contract, and that he took said cattle from feed twelve hours (except one which had died, weight 639 pounds) before weighing the same, and that said fifty-nine head of cattle weighed in the aggregate 67,405 pounds, said weight being a net gain of 29,754 pounds of flesh put on by said plaintiff while in his care, for which said net gain said plaintiff, in pursuance of the terms of said contract, becomes entitled to receive six and one-fourth cents per pound, in the aggregate the sum of eighteen hundred and fifty-nine dollars and sixty-two cents.

"III. That on the 1st day of October, A. D. 1886, defendants failed, refused, and neglected to receive said cattle as they had contracted and agreed, and that said plaintiff weighed said cattle after their being twelve hours from their feed as aforesaid, except one which had died, and that said plaintiff was entitled to receive from the defendants $1,859.62 and the same is due and wholly unpaid.

"SECOND CAUSE OF ACTION.

"And plaintiff for a second cause of action alleges that on or about the 1st day of October, 1886, by reason of the neglect and refusal of said defendants to receive said cattle from said plaintiff as they were bound to do by the terms of their contract, said plaintiff entered into an oral agreement with defendants by the terms of which it was agreed that said plaintiff should keep said fifty-nine head of cattle until December 1, 1886, upon the terms and conditions that said defendants were to receive the same at that time clear of further expense to said defendants, and upon failure of said defendants to take said fifty-nine head of cattle at the time last aforesaid mentioned said defendants were to pay said plaintiff for any time said cattle remained in his care after the said 1st day of December, A. D. 1886, what such keeping and feeding was reasonably worth.

"II. That under said oral agreement said plaintiff kept said cattle until on or about the 13th day of August, 1887, during all of which time plaintiff fed and cared for said cattle, furnishing corn, hay, and pasture in its season.

"III. That the keeping and feeding of said cattle was reasonably worth $1,470; that said sum is due and unpaid, or any part thereof, though defendants have often been requested to pay same.

"THIRD CAUSE OF ACTION.

"Plaintiff complains that on the 13th day of November, A. D. 1886, said plaintiff and defendants entered into another written contract, a copy of which is hereunto attached marked 'Ex. B,' and made a part of this petition. By the terms of said contract it was agreed that said defendants would deliver the plaintiff 263 head of steers to be fed on full feed of corn from November 15, 1886, and it was agreed that defendants would receive 209 of said cattle on the 1st day of July, 1887, and that they would

receive the remainder, fifty-four head, on the 1st day of October, 1887, the defendants reserving the right to take said 209 head after June 1st, 1887, and said fifty-four head August 1st, 1887, and the agreed weight, by the terms of said contract, of said cattle was 326,610 pounds.

"II. And it was agreed that defendants would pay plaintiff six cents per pound for all flesh put on said cattle, and plaintiff says he received said cattle under said contract, and that prior and subsequent to the time defendants were to receive them six of said cattle died, leaving in the possession of plaintiff 257; that plaintiff kept and performed each and every part of his said contract, but defendant failed, refused, and neglected to receive said cattle at the times covenanted in their said contract, and plaintiff avers that he kept said 257 head of cattle on full feed of corn up to the 25th day of July, A. D. 1887, and that plaintiff urged defendants to comply with their said contract and receive said cattle, but defendants, disregarding their covenants, still refused, neglected, and failed so to do.

"III. That on and after July 25, 1887, he was unable to procure all the corn that it was necessary to feed said cattle, and that he so notified defendants and urged them to take said cattle; that defendants still refused, and that by reason of defendants' refusing to take said cattle, and by reason of plaintiff being unable to procure corn after defendants' time for taking said cattle had passed, said cattle were not half fed for a period of forty days, when defendants, still being urged, did receive 141 head of said cattle, the same weighing 216,860, an average of 1,538 pounds; and that several days thereafter defendants, without the consent and against the objection of plaintiff, removed the remaining 116 head of cattle without weighing them, but that said 116 head of cattle were as good cattle and equal in all respects to the 141 head, and that 116 head of cattle would, in the aggregate, weigh 178,408 pounds.

" IV. That he put in flesh on said cattle 26,329 pounds, for which he should have received from defendants $4,566.12, and that the same is due and unpaid, except defendants paid two notes amounting in all to $3,190.

" V. That by reason of defendants having failed and refused to receive their said cattle on the 1st of July, 1887, and 1st of October, 1887, said cattle shrunk in weight 150 pounds each, and by reason of defendants' violating their said contract in not receiving said cattle as they had agreed, it caused great loss to the plaintiff in the sum of $1,500.

### "FOURTH CAUSE OF ACTION.

" That on or about the 1st day of December, A. D. 1888, defendants and plaintiff entered into a verbal agreement, the terms of which were that the plaintiff should receive certain cattle, known as the Little cattle, upon the same terms and conditions as the 263 head aforesaid; that plaintiff received them and duly performed all of his part of said contract and put a net gain of 3,035 pounds, for which plaintiff is entitled to receive six cents per pound, or $182, all of which is due and unpaid, though defendant has often been requested to pay the same."

To this petition the defendant below on the trial filed an amended answer as follows:

" The defendants for answer to the plaintiff's petition deny each and every allegation therein contained except such as are expressly admitted herein. Defendants admit that they contracted with the plaintiff to furnish certain cattle for plaintiff to feed and care for same, said contracts being expressed in writing and subscribed by plaintiff, and defendants' copies of said contracts are attached to the plaintiff's petition and made a part thereof; that in pursuance of said contracts the plaintiff did feed and care for said cattle for and during the time mentioned in his petition, and it was expressly understood and agreed between the plaintiff and defendants that the plaintiff was not to

have nor receive any extra compensation therefor other than what was agreed upon in said written contracts; that the plaintiff at the expiration of the times mentioned in said written contracts agreed with the defendants to continue to feed said cattle until such times as the defendants desired to receive them and take them away; and that the said written contracts were to be and continue to cover all of the time said cattle were so fed and cared for by said plaintiff, and that the same terms and conditions were to apply thereto.

" Defendants admit that plaintiff fed and cared for the 'Little' cattle, as set forth in the fourth count of his petition, and upon the terms and conditions as set forth therein; that in pursuance of the terms of said contracts, the plaintiff and defendants weighed and caused to be weighed said cattle so fed and cared for by the plaintiff, and by such weighing it was ascertained that the flesh put on said cattle by said plaintiff as per said contracts was as follows: 32,851 pounds, for which the defendants agreed to pay the plaintiff six and one-fourth cents per pound, amounting to the sum of $2,053.18; 68,890 pounds, for which the defendants agreed to pay the plaintiff six cents per pound, amounting to the sum of $4,133.40, and 335 pounds (Little cattle), for which defendants agreed to pay the plaintiff six cents per pound, amounting to the sum of $182.10; amounting in the aggregate to the sum of $6,368.68.

" That prior to the commencement of this action, to-wit, on or about the 1st day of December, 1886, the plaintiff assigned the subject-matter of this action, and all rights, title, and interest therein, to one A. G. Kendall, who then became and ever since has been the owner thereof; that before the commencement of this action they, the said defendants, satisfied the above named claim of $6,368.68 by payment to the said A. G. Kendall, assignee, and Theron N. Bell before said contracts were signed and after the same were signed by and with the consent of A. G. Kendall;

that the plaintiff, Theron N. Bell, is at present time, and was at the time of the commencement of this action, indebted to the defendants in the sum of $12,600.56, being for money had and received by said Theron N. Bell from the defendants for his own use and benefit, and $69 being for the defendants' share of the profits of three car loads of hogs, which the plaintiff received and converted to his own use, and did not pay these defendants as he was required by terms of his contract before that time was made to do, which agreement was made and said money received during the years 1886 and 1887.

"The defendants further allege, as a separate defense, that on or about the —— day of October, 1887, the plaintiff and these defendants had a full and complete settlement of all matters and differences between them, save and except two items mentioned in this answer as composing the sum of $126, and on the date of said settlement, and under the terms thereof, defendants then and there paid to the plaintiff the sum of $1,000, it then and there being agreed by the plaintiff and these defendants there still remained due the plaintiff, under the contract for keeping the said cattle, the sum of $61.84, which, in pursuance of said settlement, the defendants were to pay to the plaintiff within a few days, and the defendants allege that within said few days, to-wit, on the —— day of November, 1887, they paid said sum of $61.84, as shown by said check to the plaintiff, in full satisfaction of all claims and liabilities against these defendants under the contracts and agreements for the keeping of said cattle; that said sums of $1,000 and $61.84 were at once paid over to said A. G. Kendall by said Theron N. Bell.

"The defendants therefore pray that they may recover judgment against the plaintiff herein in the sum of $126, upon the said cause of action so alleged, which was not included in said settlement, and their costs herein expended, and that the defendants, so far as the plaintiff's cause of action relates, go hence without date."

The court, at the defendant's request, made special findings, as follows:

"Now comes the defendants, before judgment and before the court has made a finding in the case, and prays the court to make special finding separately of the facts and the law in the case, and to make a special finding of facts upon the following questions:

"Q. On or about November 3, 1886, in Grand Island, Nebraska, did the plaintiff, Theron N. Bell, make an agreement with the defendants, Hunter & McArthur, by the terms of which he was to keep the sixty head of cattle which he had prior to that time held under contract with said defendants for a period beginning October 1 and ending December 1, 1886, without charge to the defendants?

"Yes.

"Q. Did the plaintiff, Theron N. Bell, at Grand Island, Nebraska, on or about November 3, 1886, make an oral agreement with the defendants by the terms of which he was to keep said sixty head of cattle from October 1, 1886, upon the same conditions which he had prior to that time been keeping them, until such time as defendants should take away the 263 head of cattle, which the said plaintiff then had and was about to contract with the defendants to keep, which head he did about that time contract in writing to keep?

"No.

"Q. Did the plaintiff, Theron N. Bell, on or about May 13, 1887, change the terms of the written contract which he had, on or about November 13, 1886, made with the defendants for the keeping of 263 head of cattle, by agreement to place the same in a pasture? And if so, did that agreement affect also the fifty-three head of cattle then remaining from the lot referred to as the sixty head?

"Yes.

"Q. Did the defendants agree to pay the plaintiff for keeping the 209 head beyond and after July 1, 1887?

And if they did, was the plaintiff to be paid by the number of pounds added to the cattle, or a reasonable consideration for keeping the same?

" Reasonable consideration.

" Q. Was there a shrinkage upon all of the cattle, or any portion of them, caused by their being left over a time and the plaintiff not having corn to feed them? If so, how much?

" Yes; forty pounds.

" Q. Did the defendants pay any portion of the money which they paid to the plaintiff, unauthorized or in violation of the rights of the St. Paul National Bank? If so, how much?

" No.

" Q. How much money has been paid by the defendants upon the contracts for the keeping of all the cattle referred to?

" Six thousand four hundred and ninety-four dollars and sixty-eight cents.

" Q. Did the plaintiff and the defendants, on or about October, 1887, have a settlement of all their differences, if any there had prior to that time existed, in regard to the keeping of the cattle referred to?

" No final settlement.

" Q. If you find that at the settlement in October, 1887, there was $61.84 due the plaintiff from the defendants, then find whether or not that sum so agreed upon had been paid or not.

" Was paid."

The defendants also requested the court to make a special finding of the law applicable to this case upon the following propositions:

" Q. Is not the claim of damages made by the plaintiff by reason of a shrinkage in the cattle caused by not having corn to feed them, too remote and speculative and not a subject to be recovered upon in this case?

" No.

20

" Q. As a matter of law, was it not a duty of the plaintiff to go into the market and buy corn at whatever price it could be obtained, and feed the cattle, charging the defendants whatever price he had to pay? If you find the fact to be that the defendants were to pay him a reasonable price, or whatever it was worth, to keep the cattle beyond July, 1887, or whether they were paying him by the amount of flesh put on under either the written or oral contract.

" Was his duty to make reasonable effort to obtain it.

" Q. As a matter of law, find if the contracts that were made with Bell by the defendants had been assigned to the St. Paul National Bank, was it still not a duty and the legal right of the defendants to settle the amount and determine the amount due upon said contracts with the plaintiff, provided the payments went to the St. Paul National Bank?

" Yes.

" Q. As a matter of law, if the St. Paul National Bank, by its officers, had knowledge that there was an oral agreement between the plaintiff and the defendants, extending, changing, or modifying the written contracts, would not said St. Paul National Bank be bound by such extensions, changes, or modifications, provided they did not object to such changes and accepted money paid on such extended, changed, or modified contracts, after knowledge of the same?

" Yes."

The court rendered judgment for the defendants in error for the sum of $2,098.64.

The first ground of error in the motion for a new trial is, in substance, that the court erred in receiving evidence of cattle-feeders out of court to show that the 260 head would shrink in weight during the time Bell was unable to procure corn to feed them.

In support of this contention, an affidavit of one of Mr.

Hunter v. Bell.

Bell's attorneys is attached to the motion for a new trial, in which it is stated that the judge, in rendering judgment, had said that he had inquired of experienced stockmen of his acquaintance to find out whether or not cattle situated as those were would shrink or not, and that from all the testimony he had concluded that the cattle would shrink forty pounds each during this time, and that he would allow the plaintiff that sum as damages.   The affidavit, however, is not authenticated in any manner, nor is there anything before us to show that it was used on the hearing of the motion for a new trial.   It therefore cannot be considered.

Second—Error of the court in finding that there was no final settlement of the parties in October, 1887.

Third—That the judgment is contrary to the tenth finding of fact.

Fourth—That the judgment is against the weight of evidence.

Fifth—That the judgment is contrary to law.

Sixth—That there is no evidence upon which the court could find for the plaintiff and against the defendants.

Seventh—That there is no evidence to justify the ninth finding of fact.

Eighth—That the judgment is contrary to the special findings of facts.

There are also a number of assignments of errors of law which need not be noticed.

It will be observed that the ninth finding of fact is, that there was no final settlement between the parties in October, 1887.

The questions involved in this case are questions of fact, and upon almost every point the evidence is conflicting.   It is not seriously contended that the judgment is against the weight of evidence, and there seems to be no material error in the record.   The judgment is therefore

AFFIRMED.

THE other judges concur.