FRANK ANDERSON, APPELLANT, V. UNION STOCK YARDS COMPANY, APPELLEE.

FILED APRIL 24, 1909.   No. 15,518.

1. **Appeal:** MOTION FOR NEW TRIAL. Rulings which do not pertain to the trial in such a sense as to make them assignable as causes for a new trial, such as rulings upon demurrers, motions addressed to pleadings, etc., need not be called to the attention of the trial court by motion for a new trial to make them available upon appeal.

2. ——: LAW OF CASE. On a former appeal from a judgment in favor of the plaintiff, the case was reversed on the ground that the verdict was not sustained by the evidence. On a second trial of the case, the evidence offered by the plaintiff was substantially the same as on the first trial, the plaintiff failing to adduce any new material testimony. The trial court directed a verdict for the defendant. *Held*, No error.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Weaver & Giller,* for appellant.

*Greene, Breckenridge & Matters, contra.*

DUFFIE, C.

The plaintiff brought this action against the Union Stock Yards Company to recover for injuries received while engaged in switching the cars of the company in its yards at South Omaha. The case was once before appealed to this court, the opinion being reported in 77 Neb. 196. In his original petition the plaintiff charged negligence on the part of the defendant, in that the cars which he was engaged in switching were not equipped with automatic couplers, and, also, in allowing its road-bed or track to become in a condition dangerous to its employees. Prior to the first trial the court, on motion of the defendant, struck from the petition that part charging negligence on account of the cars not being equipped with automatic couplers, and the case was tried upon the remaining allegations of the petition. The plaintiff recovered, but the judgment was reversed, this court holding that the plaintiff had assumed the risks of the injuries of which he complained. On the case being remanded to the district court, the plaintiff filed an amended petition, again charging the defendant with negligence because of the want of automatic couplers on its cars, and, further, in maintaining at the edge of its roadbed a hole six or eight inches deep, into which he stepped, losing his

equilibrium, when he was caught between one of the cars and a platform adjacent to the roadbed, and thus received the injuries of which he complains. That part of the petition relating to the failure to equip its cars with automatic couplers was again stricken from the petition by the district court, and the case tried a second time upon the remaining allegations of the petition. On the conclusion of the plaintiff's testimony, the court on motion of the defendant directed a verdict in its favor, and from a judgment rendered thereon the plaintiff has appealed.

One of the errors assigned is the action of the district court in striking from the petition the charge of negligence in not equipping its cars with automatic couplers. The defendant insists that this assignment of error cannot be considered, as it was not assigned as one of the grounds of plaintiff's motion for a new trial. There are several cases in our reports indicating, if not directly holding, that an order of the trial court in sustaining or overruling a demurrer, a motion to strike or to make more specific, or other order made relating to the pleadings must, in order to be considered by this court, be included in the motion made to the district court for a new trial of the case. An examination of our statute relating to new trials and the constructions heretofore placed thereon in numerous cases establishes beyond any doubt the rule that orders of the district court which do not pertain to the trial of the case, such as rulings upon demurrer, motions addressed to the pleadings, and motions to dismiss, need not be called to the attention of the trial court by motion for a new trial to make them available on appeal taken to this court. *O'Donohue v. Hendrix,* 13 Neb. 255; *Farris v. State,* 46 Neb. 857; *Claflin v. American Nat. Bank,* 46 Neb. 884; *Scarborough v. Myrick,* 47 Neb. 794; *Deere, Wells & Co. v. Eagle Mfg. Co.,* 49 Neb. 385; *Hans v. State,* 50 Neb. 150; *Horton v. State,* 60 Neb. 701; *Slobodisky v. Curtis,* 58 Neb. 211, where our previous decisions are collated by Mr. Justice NORVAL. The latest expression of this court upon the question is found in

*Walker v. Burtless,* 82 Neb. 214. The syllabus is as follows: "If the consideration of a record of the district court does not require. the examination of any issue of fact or error of law occurring at the trial, which could only be preserved by a bill of exceptions, a motion for a new trial is not a condition precedent to a review of that record in this court."

The question being fairly presented by the record, we cannot escape the duty of determining whether it was error to the plaintiff's prejudice in striking from the plaintiff's petition the statements relating to the want of automatic couplers upon the cars. We·think it a question not open to controversy, both from his petition taken as a whole, and from his own testimony given upon the trial, that the want of the automatic couplers was not the proximate cause of the plaintiff's injuries. During the taking of evidence, some testimony relating to the character of the couplers was offered, and, on a protest from the defendant against the admission of such evidence on account of the matter in the petition relating thereto being stricken out, the court said: "This evidence is received, not for the purpose of showing negligence, but merely for the purpose of describing the manner in which the accident happened." It so happens, therefore, that the record contains the plaintiff's description of the couplers and their operation. His own version of the occurrence is, in short, as follows: Several of the defendant's cars stood on a track on one side of which was an ice platform, and on the other side the platform of the main building of one of the packing houses. The switching crew, of which the plaintiff was one, were ordered to couple several cars standing on another track to the cars standing between the two platforms. The cars which were to be coupled were backed in onto the track between the two platforms, the plaintiff riding on top of the moving car nearest those to which the moving cars were to. be coupled. The approach was made on what is called a "reverse curve," and the coupling was not made on account of the drawbars not

being in proper position. The engineer, in compliance with a signal from the plaintiff, moved his engine until the car upon which plaintiff was riding was eight or ten feet distant from the car to which it was to be coupled, and the plaintiff got down from the top of the car, adjusted the coupling bars, and opened the knuckles of the coupler. What followed we give in his own language: "After I had the drawbars and knuckles adjusted, I stepped out and gave the signal to come ahead. I was going to get on the brakebeam, and hang with my right hand on the end ladder on the brakebeam, and hold the lever up with my left hand so that I could make the coupling. It was while I was in the act of doing this that I stepped into a hole and fell over against the platform, and I got hurt." Again he describes it in much the same manner: "Well, when I gave the signal to come ahead, I, of course, stepped out to give the signal so that they could see me, and I was reaching for the grab iron on the end of the car, and, as I stepped out to give the signal, I stepped into a hole and fell over against the platform, and the cars that was coming they rolled me between the car and the platform, and Mr. Hermes was following me, and seen me fall, and gave the signal to stop."

This testimony is conclusive that it was not a want of automatic couplers that caused the injuries. Cars equipped with automatic couplers must have their drawbars in proper position when the coupling is attempted on a curve in the track. The plaintiff had gotten down from the top of the car upon which he was riding, had opened the knuckles of the coupler, and adjusted the drawbars so that the knuckles would interlock. This was while the cars were from eight to ten feet apart. He then stepped outside the rail, signaled the engineer, and, in attempting, not to make the coupling, but to take hold of the grab iron on the car, and to step onto the brakebeam, lost his balance on account of the hole or defect in the roadbed, fell against the platform, and was caught by the car which he had signaled the engineer to move.

Again, cuts of the couplers which the plaintiff produced and exhibited upon the trial as similar to, although not exactly the same as, those with which the drawbars in question were equipped, make it quite evident, in connection with other testimony given by the plaintiff, that the cars were equipped with some kind of automatic couplers, and did not require the plaintiff to go between the ends of the cars to make the couplings. There is a bar or lever attached to the car extending out to within three or four inches of the side of the car, which is used to hold up the lockpin while the cars are coming together, after which the pin is released and the coupling effected. When asked why he did not get upon the platform after signaling the engineer to move the cars, he said: "It was because of holding the lever up there." Then this question was asked him: "Do you mean to say, Mr. Anderson, that it was necessary to make the coupling for you to hold up the lever to hold up the lockpin?" Answer. "Yes, sir." The platform was within a few inches of the car, and it was this platform that required him to ride, or attempt to ride, the brakebeam while handling the lever which controlled the lockpin while the cars were approaching. In the absence of the platform, the plaintiff would have walked beside the car while it was being moved toward the one to which it was to be coupled. We conclude from the plaintiff's own statements, not only that the character of the couplers with which the car was equipped had nothing to do with the accident, but also that the cars were supplied with couplers which did not require the plaintiff to go between them in order to couple them. Under the circumstances, the plaintiff was not prejudiced by striking from his petition the matter relating to the character of the car couplers.

A careful reading of the evidence and comparing it with the opinion written on first appeal discloses that no new or material evidence favorable to the plaintiff's case was introduced on this trial. This was also the view of the trial court, who said, in directing a verdict: "And,

inasmuch as the evidence on this trial is not substantially different from that received on the former trial, I am forced in compliance with the decision of the supreme court to instruct you to return a verdict for the defendant." It would be useless to again review the evidence. The principal facts are stated by Judge Ames, in the opinion written on the former appeal, and the plaintiff in his brief does not attempt to point out any additional evidence given on this trial which would require a holding different from the opinion filed on the first appeal.

We recommend an affirmance of the judgment.

Epperson, Good and Calkins, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.